# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| TIVO INC.,<br><br>    Plaintiff,<br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>    Defendants. | Case No. 2:15-cv-1503<br><br>**JURY TRIAL DEMANDED** |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>    Counterclaim Plaintiffs,<br>vs.<br><br>TIVO INC.<br><br>    Counterclaim Defendant. | |

## SAMSUNG'S MOTION TO COMPEL TIVO'S INFRINGEMENT CONTENTIONS

### I. INTRODUCTION

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") respectfully move to compel TiVo Inc. ("TiVo") to provide infringement contentions that comply with the Court's Patent Rules.

TiVo's infringement contentions fail to disclose where TiVo contends each element of each asserted claim is found within the accused instrumentalities and fail to put Samsung on notice of TiVo's infringement theories. Specifically, TiVo fails to provide Samsung with reasonable notice of TiVo's infringement theories for thirty-five software elements across two asserted patents. Although all of these claim elements are software elements, TiVo has not

invoked P.R. 3-1(g), which would allow TiVo to delay compliance with its P.R. 3-1(c) obligations until 30 days after Samsung produces its source code. Instead, TiVo insists that its infringement contentions satisfy P.R. 3-1 in their current state.

What's more, TiVo simultaneously alleges that—despite the plain language of P.R. 3-1(g)—it may identify software limitations pursuant to P.R. 3-1(g) at any time after serving its contentions and freely supplement its contentions, based on Samsung's code, at any time after receiving such code, without the Court's leave. In essence, TiVo refuses to put Samsung on notice of its positions by virtue of its vague and deficient contentions or commit to curing its deficiencies pursuant to P.R. 3-1(g), yet purports to reserve the right to fully disclose its theories at some indeterminate time in the future, if and when it so unilaterally chooses. Such an approach is contrary to the Patent Rules, both in spirit and language, prejudicing Samsung's ability to defend against TiVo's claims.

For these reasons and those further stated herein, Samsung respectfully asks the Court to grant its motion.

## II.  BACKGROUND

On February 8, the parties served their respective infringement contentions. Specifically, TiVo served infringement contentions for 67 claims of its 4 asserted patents: 6,233,389; 6,792,195; 7,558,472; and 8,457,476 (collectively, the "TiVo Asserted Patents"). Samsung served infringement contentions for 20 claims of its 4 asserted patents: 6,181,333; 7,231,592; 8,233,090; 5,978,043 (collectively, the "Samsung Asserted Patents"). TiVo's contentions do not invoke P.R. 3-1(g).

On February 19, Samsung wrote to TiVo to identify—in eighteen pages of detail— several deficiencies in TiVo's infringement contentions, explaining that for many claim elements, TiVo had failed to provide reasonable notice of specifically where it contends the

claimed features are found in the accused products.  (Ex. A.)[1]  After over two weeks of delay,

TiVo responded by letter, largely failing to address Samsung's detailed concerns, claiming it did

not understand Samsung's letter and posing numerous questions, but nevertheless asserting that

TiVo fully complied with its P.R. 3-1(c) obligations.  (Ex. B.)  At the same time, TiVo made

plain that it believed it needed Samsung's source code to disclose many of its infringement

theories:

> Many of Samsung's issues, for example regarding the '389 patent's "objects" and
> the various "means" in the '195 patent, are generally directed to functionality of
> Samsung's software.  This complaint is not well-founded.  Exemplary evidence
> for the existence and functionality of, e.g., the "objects" is laid out in TiVo's
> infringement contentions.  ***Other than the fact that Samsung has not yet
> produced its software, it is unclear what Samsung is complaining about.***

(*Id.* at 3 (emphasis added).)[2]

Samsung responded on March 16, expressing concern that TiVo failed to substantively

address Samsung's concerns, and noting that—in light of TiVo's statements regarding

Samsung's code—TiVo should invoke P.R. 3-1(g) if it intended to supplement its contentions

based on Samsung's source code production.  (Ex. C at 1.)  In reply, TiVo surprisingly

contended that it was not relying on P.R. 3-1(g) because it did not need Samsung's source code

to comply with its P.R. 3-1(c) obligations.  Remarkably, TiVo also stated that, despite P.R. 3-

1(g)'s language, TiVo could identify software limitations ***at any time after*** receiving Samsung's

source code ***without*** invoking P.R. 3-1(g) in its contentions.  (Ex. D at 2.)  Further, TiVo alleged

that since many of the claims in Samsung's Asserted Patents are software claims, TiVo should

not be required to invoke P.R. 3-1(g) without Samsung likewise doing so.  (*Id.*)

---

[1] Exhibits referenced herein are exhibits to the Declaration of Thad C. Kodish accompanying this motion.

[2] Samsung will produce its source code in accordance with the Local Patent Rules.  *See* Dkt. 42 at 4 (setting P.R. 3-4 date as April 25.)

The parties met and conferred on March 25, during which the parties largely maintained the positions expressed in the respective correspondence. TiVo alleged that its contentions complied with P.R. 3-1(c), that is has not (and need not) invoke P.R. 3-1(g), and that any invocation of P.R. 3-1(g) must be reciprocal even though TiVo has yet to identify a single software element in Samsung's infringement contentions for which it contends Samsung failed to meet its P.R. 3-1(c) obligations. TiVo further stated that, even if it did invoke P.R. 3-1(g), it would not be required to supplement its infringement contentions within 30 days of Samsung's source code production. Conversely, Samsung alleged that TiVo had not complied with P.R. 3-1(c), that TiVo must either comply or invoke P.R. 3-1(g), and that TiVo's demand for reciprocal P.R. 3-1(g) invocation is *non sequitur*, as TiVo has not contended that Samsung's infringement contentions fail to satisfy P.R. 3-1(c). If TiVo has any such concerns, Samsung assured TiVo it would promptly address them by supplementing its contentions as appropriate. To date, TiVo has not enumerated any such concerns. The parties were unable to reach agreement.[3]

## III.    ARGUMENT

The Court should compel TiVo to provide infringement contentions that comply with P.R. 3-1(c), by requiring TiVo to either (i) immediately amend its contentions to provide the required specificity or (ii) invoke P.R. 3-1(g) and fulfill its corresponding obligation to supplement TiVo's contentions within 30 days of source code production.

### A.    TiVo's has failed to Comply with P.R. 3-1(c)

TiVo has failed to provide Samsung with the requisite notice of its infringement contentions by failing to show or identify where it contends various accused features reside in

---

[3] The parties' local and lead counsel further attempted to resolve the issue between April 2 and April 12, 2016. The parties were unable to reach agreement. (*See* Exs. H and I (ltrs. between Tom Werner to Erin Alper dated April 12, 2016).)

the accused products.  P.R. 3-1's purpose is to "require parties to crystallize their theories of the case early in the litigation so as to prevent the 'shifting sands' approach to claim construction." *Keranos, LLC v. Silicon Storage Tech., Inc*., 797 F.3d 1025, 1035 (Fed. Cir. 2015) (citations omitted).  To that end, P.R. 3-1 contentions "must be reasonably precise and detailed . . . to provide a defendant with adequate notice of the plaintiff's theories of infringement, [but] they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement."  *ROY-G-BIV Corp. v. ABB, Ltd*., 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014) (citations omitted).

Underscoring TiVo's failure to comply with P.R. 3-1, TiVo simultaneously insists (1) that its contentions fully comply with P.R. 3-1(c), requiring no reliance on P.R. 3-1(g), and (2) that it may identify source code limitations pursuant to P.R. 3-1(g)—and thereafter supplement its contentions under P.R. 3-1(g)—at any time ***after*** serving its infringement contentions.  Such a position prejudices Samsung's ability to prepare its defensive case.  Samsung does not demand the impossible.  Samsung merely requests that TiVo commit to providing fair notice of its infringement theories, once it has had access to Samsung's source code—precisely as this Court has laid out in P.R. 3-1(g).  TiVo refuses.

### 1. "Automatically Flow Controlled" ('389 Patent, Claims 31 and 61)

For example, the '389 patent's claims 31 and 61 claim a "source object" and a "sink object" that are both "automatically flow controlled."  TiVo fails to identify what it believes to be the claimed "automatically flow controlled" functionalities in any accused DVR.  (Ex. E at 54-55 and 61-62 (elements 31[f] and 31[i]), 116-17 and 123-24 (elements 61[f] and 61[i]).)  Instead, TiVo alleges that "[o]n information and belief," the accused DVRs have "self-regulating data flow."  (*Id*.)

This vague reference, without more, amounts to little more than parroting the claim's language and Court's prior construction but certainly does not put Samsung on notice as to where TiVo contends the asserted claim element is found within Samsung's accused products. What, if any, software is allegedly responsible for this "self-regulating flow," and why does TiVo, on information and belief, think that Samsung's devices are self-regulating (*i.e.*, how are the accused instrumentalities "self-regulating?")? Perhaps in an attempt to provide some specificity, TiVo states that it believes Samsung's DVRs have self-regulated data flow in relation to "DRAM," *i.e.*, a common form of computer memory hardware. (*Id.*) But, is TiVo claiming that DRAM hardware necessarily provides "automatic flow control?" How does TiVo contend the presence of DRAM has any relation to the claimed "automatic flow control?"

Similarly, TiVo states "there is no significant corruption of data due to overwriting or lack of self-regulation." How does TiVo contend a lack of significant corruption has any relation to the claim's "automatic flow?" How does that statement reveal where TiVo contends the Samsung products allegedly practice "automatic flow control?" Without any detail as to their relevance, these assertions are simply additional words on a page failing to serve the contentions' notice function— namely, to disclose "specifically where" TiVo contends the "automatically flow controlled" functions are found. *See* P.R. 3-1(c).

As to Samsung's accused mobile phones and tablets, TiVo likewise fails to show where the claimed "automatically flow controlled" functions reside, again alleging that "[o]n information and belief," the accused devices have "self-regulating data flow." (Ex. F at 24-27 and 31-34 (elements 31[f] and 31[i]), 57-60 and 63-66 (elements 61[f] and 61[i]).) For these devices, TiVo additionally includes, without any explanation or citation, an image of a "direct

memory access control." (*Id.*) But nowhere does TiVo explain or otherwise provide reasonable notice as to specifically where this element is found within any of the accused instrumentalities.

### 2. "Source Object" ('389 Patent, Claims 31 and 61)

As another example, the '389 patent's claims 31 and 61 claim a "source object" that "extracts video and audio data from [a] physical data source." TiVo fails to identify what it believes to be the claimed source object in any accused DVR. (Ex. E at 48-50 (element 31[c]) and 110-12 (element 61[c]).) Instead, TiVo alleges that the accused DVRs "provide[]…a collection of data and operations" that move data from BCM3255 to memory. (*Id.*) What is the "collection of data and operations" to which TiVo refers? Samsung has asked TiVo repeatedly, with no substantive response. TiVo's vague contention that a wholly unidentified "collection of data and operations" satisfies the claim limitation does not and cannot serve as sufficient notice of TiVo's infringement theories.

As to Samsung's accused mobile phones and tablets, TiVo likewise fails to show where the claimed "source object" resides, again alleging an unidentified "collection of data and operations" moves data from a chip to memory. (Ex. F at 17-21 (element 31[c]), 50-54 (element 61[c]).) For these devices, TiVo points to what it calls a "multimedia subsystem" on certain chips as moving data as claimed. (*Id.*) TiVo provides no identification as to what the multimedia subsystem is or what part of the subsystem satisfies the claim language. Is the entire multimedia subsystem the source object? Part of it? Which part? Rather, TiVo pastes diagrams without explanation or annotation from which Samsung can discern TiVo's allegations. Again, such vague contentions cannot serve as sufficient notice of TiVo's infringement theories.

During the parties' meet-and-confer, TiVo was unwilling or unable to identify what aspect of the pasted "exemplary evidence" it contends even relates to the asserted claim element.

Rather, TiVo insists that it has produced "hundreds" of pages of claim charts with exemplary evidence and Samsung must consider all of it in its totality. But, the volume of pasted material only obfuscates TiVo's infringement theories further. By analogy, it is as if TiVo merely copied the entire contents of the Dallas, Texas "white pages" to satisfy its Rule 26 initial disclosure obligation to identify individuals with relevant knowledge. The relevant information *might* be in there somewhere, but Samsung has no idea where TiVo believes it is.

### 3. "Providing Cache Access/Control Means" ('195 Patent, Claims 58, 78, and 119)

As another example, the '195 patent's claims 58, 78, and 119 claim "providing cache access means" for performing certain functions. TiVo fails to identify a structure within any accused DVR that it believes corresponds to the "providing cache access means" limitation. (Ex. G at 7-8 (claim 58), 35-36 (claim 78), 60-61 (claim 119).) Instead, TiVo states that Samsung DVRs include an unidentified "controller" or "controller and associated circuitry" followed by purely conclusory allegations that largely parrot the claim language or the Court's prior construction for this software means-plus-function limitation.[4] (*Id.*) These kinds of bare allegations may suffice in a complaint for patent infringement, but P.R. 3-1 requires more of TiVo at this stage in the litigation.

### 4. "Stream Capture Means" ('195 Patent, Claims 60, 79, 121, and 122)

As another example, the '195 patent's claims 60, 79, 121, and 122 (via 121) recite a "stream capture means for capturing information for a particular data stream type and encoding

---

[4] That this claim uses a "means" formulation does not excuse TiVo. Under P.R. 3-1(c), if TiVo contends that the element is governed by 35 U.S.C. § 112(6), it must disclose the "identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." P.R. 3-1(c). Since, TiVo does not do so, Samsung cannot fairly investigate and analyze TiVo's allegations if it is not on notice as to what product features TiVo is accusing.

said information before storing said information in said linear cache."  Again, TiVo fails to specifically identify what structures within the accused product allegedly correspond to this software means-plus-function limitation.  (Ex. G at 20-21 (claim 60), 45-46 (claim 79), 67-68 (claim 121).)  Other than allege that this limitation is based "on information and belief," TiVo concludes without any explanation that part of the recited function is performed during "selection of a particular channel" and proceeds to cite without explanation or annotation a single block diagram of a chip.  (*Id.*)  These "contentions" wholly fail to provide an indication of what TiVo alleges to be the claimed "stream capture means" and where specifically it is found in Samsung's products.  Samsung cannot fairly investigate and analyze TiVo's allegations if it is not on notice as to what specifically TiVo is accusing.

> **5.** **Other Software Limitations for which TiVo fails to comply with P.R. 3-1 While Refusing to Invoke P.R. 3-1(g)**

The above deficiencies are just a handful of instances where TiVo fails to identify where it contends various accused features reside in the relevant accused products, at best including diagrams or vague, conclusory statements parroting claim language, without a way for Samsung to discern what in Samsung's accused devices TiVo contends practice the claim elements. For efficiency, Samsung will not detail each and every such deficiency in this brief, but instead summarizes below the software related elements for which TiVo has not complied with Rule 3-1(c) and at the same time refuses to invoke Rule 3-1(g), all of which are described in detail in Samsung's February 19 correspondence to TiVo.[5]

    a.    '389 patent, Claims 31 and 61: "providing a transform object" (Ex. A at 5 ¶ 8, 7 ¶ 17);[6]

    b.    '389 patent, Claims 31 and 61: "wherein said source object obtains a buffer" (*Id.* at 5 ¶ 9, 8 ¶ 18);[7]

    c.    '389 patent, Claims 31 and 61: "providing a sink object" (*Id.* at 6 ¶ 11, 8 ¶ 20);[8]

    d.    '389 patent, Claims 31 and 61: "providing a control object" (*Id.* at 6 ¶ 12, 9 ¶ 22);[9]

---

[5] For efficiency and to narrow the issues for resolution, Samsung is only including in this motion the software limitations for which TiVo has failed to satisfy its P.R. 3-1 obligations. As to the numerous deficiencies for non-software limitations detailed in Samsung's February 19 letter (Ex. A), Samsung maintains that TiVo has not satisfied its Patent Rule 3-1 obligations to reveal its infringement theories. Rather than burden the Court with additional disputes at this point, Samsung expressly reserves its right to separately move on these deficiencies, as well to seek to exclude any TiVo expert opinions that rely on infringement theories or allegations beyond that or different from those specifically identified (and thus for which Samsung was fairly put on notice) in TiVo's infringement contentions.

[6] Ex. E (DVRs) at 50-52 (element 31[d]), 112-14 (element 61[d]); Ex. F (phones and tablets) at 21 (element 31[d]), 54 (element 61[d]).

[7] Ex. E (DVRs) at 52-54 (element 31[e]), 114-116 (element 61[e]); Ex. F (phones and tablets) at 21-24 (element 31[e]), 54-57 (element 61[e]).

[8] Ex. E (DVRs) at 55-58 (element 31[g]), 117-120 (element 61[g]); Ex. F (phones and tablets) at 27-30 (element 31[g]), 60-62 (element 61[g]).

[9] Ex. E (DVRs) at 62-63 (element 31[j]), 124-125 (element 61[j]); Ex. F (phones and tablets) at 34 (element 31[j]), 66 (element 61[j]).

e.  '389 patent, Claims 31 and 61: "wherein said control object sends flow command events" (*Id.* at 6 ¶ 13, 9 ¶ 23);[10]

f.  '195 patent, Claims 57 and 58: "providing synchronization means" (*Id.* at 10 ¶ 3);[11]

g.  '195 patent, Claims 57, 58, 119: "where said linear cache discards any information that falls outside of said window" (*Id.* at 10 ¶ 4);[12]

h.  '195 patent, Claims 59 and 78: "wherein said cache control means sends clock events to said cache access means to control a rate and direction of said streaming access" (*Id.* at 10 ¶ 9);[13] and

i.  '195 patent, Claims 64 and 83: "presentation means" (*Id.* at 11 ¶ 14).[14]

## B.    TiVo Refuses to Invoke P.R. 3-1(g)

This Court has devised a rule to deal with situations precisely like this one, where a party is unable to satisfy its P.R. 3-1 obligations without access to the opposing party's source code:

> Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself.  From this manifestation, plaintiffs must somehow divine whether the defendants' code infringes.  Although defendants vigorously and rightly guard their source code, until plaintiffs have access to it, plaintiffs are typically unable to give highly specified infringement contentions.  To the extent defendants are given vague infringement contentions, they are hampered in their ability to prepare their defense.

*Am. Video Graphics, L.P. v. Elec. Arts, Inc*., 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005).

---

[10] Ex. E (DVRs) at 63-65 (element 31[k]), 125-27 (element 61[k]); Ex. F (phones and tablets) at 34-35 (element 31[k]), 66-67 (element 61[k]).

[11] Ex. G (DVRs) at 11, 39.

[12] Ex. G (DVRs) at 16, 45, 67.

[13] Ex. G (DVRs) at 16-19, 41-43.

[14] Ex. G (DVRs) at 21-25, 46-50.

"Rule 3-1(g) is designed to ameliorate the 'unique challenges' present in some software cases, in which a plaintiff *requires access to source code for the accused products in order to comply with its disclosure obligations* under Rule 3-1." *SSL Servs., LLC v. Cisco Sys., Inc.*, No. 2:15-CV-00433-JRG-RSP, 2016 WL 727673, at *7 (E.D. Tex. Feb. 24, 2016) (citing *Am. Video Graphics*, 359 F. Supp. 2d at 560) (emphasis added). "To invoke Rule 3-1(g), a party *must 'assert*[ ] that a claim element is a software limitation' in some *overt way*, preferably in its infringement contentions." *Id.* (emphasis added). "The party invoking Rule 3-1(g) need not comply with Rule 3-1 for the limitation(s) that it has asserted are software limitations, but must supplement its infringement contentions *within 30 days of the production of source code* to make its contentions compliant." *Id.* (emphasis added). The Court's Model Discovery Order (and the parties' proposed Discovery Order) includes P.R. 3-1(g). (Dkt. 46-1 ¶ 3.)

If TiVo is unable to satisfy its P.R. 3-1 obligations as to the above-discussed claim elements because it needs Samsung's source code, TiVo can invoke P.R. 3-1(g) and that would end this matter. TiVo's invocation must be express and unambiguous, so that Samsung is aware of the specific elements TiVo contends it cannot satisfy without code and, likewise, the specific elements as to which TiVo will be supplementing within 30 days of Samsung's source code production. While TiVo does state that its allegations for certain claim elements for which has failed to satisfy its P.R. 3-1(c) obligations are based "on information and belief" and "[w]ithout seeing the source code for the device itself,"[15] TiVo has expressly stated, in correspondence and/or during the parties' March 25 meet and confer, that it has not and need not invoke P.R. 3-1(g).

---

[15] Ex. F at 17, 21, 24, 26, 27, 33, 34, 51, 54, 57, 59, 60, 65, 66.

Rather, TiVo asserts that P.R. 3-1(g) allows TiVo "to identify software limitations **after** the production of source code" (Ex. D at 2 (emphasis added)) and, that if TiVo did identify software limitations, it need not supplement its contentions within 30 days of Samsung's source code production, but could supplement at some unidentified time "thereafter." All these positions are incorrect under the plain language and purpose of P.R. 3-1(g), as reiterated in the Court's recent decision in *SSL Servs.*, No. 2:15-CV-00433-JRG-RSP, 2016 WL 727673, discussed above. Indeed, in finding that P.R. 3-1(g) did not apply to SSL's contentions because "SSL did not invoke rule 3-1(g) **when it served its infringement contentions**," the Court stated that consequently "SSL cannot amend its contentions as of right pursuant to Rule 3-1(g)." *Id.* at *8 n.9 (emphasis added).[16]

\* \* \*

It matters not to Samsung whether TiVo timely provides revised contentions that comply with P.R. 3-1 to enable Samsung to conduct its investigation and prepare its invalidity contentions, or invokes P.R. 3-1(g) to delay this compliance. That is TiVo's choice. Samsung simply asks that TiVo comply with the Court's rules, so that Samsung may receive infringement contentions that are reasonably precise and detailed enough to put Samsung on notice of TiVo's infringement theories to help focus the case. As explained by Judge Davis:

---

[16] Relatedly, TiVo's demand that Samsung arbitrarily invoke P.R. 3-1(g) as to all "software elements" in Samsung's Asserted Patent claims is incompatible with the plain language of the rule. P.R. 3-1(g) does not require parties to identify every claim element that implicates software as a P.R. 3-1(g) "software limitation." Rather, P.R. 3-1(g) requires parties who **cannot comply** with their P.R. 3-1 obligations for certain claim elements without source code to identify such elements as P.R. 3-1(g) software limitations. *See SSL Servs.*, No. 2:15-CV-00433-JRG-RSP, 2016 WL 727673, at *7-8 (finding P.R. 3-1(g) not applicable to SSL's contentions where SSL did not invoke the rule in its contentions and "argue[d] it 'has **already provided contentions that comply** with P.R. 3-1'" (emphasis added)). Samsung does not contend that it needs TiVo's source code to comply with its P.R. 3-1 obligations, nor has TiVo alleged any deficiencies in Samsung's contentions, served nearly two months ago. Samsung stands ready and willing to address any such concerns should TiVo actually identify them.

Specific theories create a specific trajectory for the case. When parties accuse hundreds of products of infringing hundreds of claims, and only narrow those accusations after discovery, the case staggers for months without clear direction. However, when parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond.

*Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) (granting motion to compel supplemental infringement contentions). Presently, TiVo is attempting to have it both ways: refusing to provide sufficient notice of its infringement theories as to software limitations, while reserving its right to update its contentions as to these limitations following source code production without properly invoking P.R. 3-1(g) and the rule's timely supplementation obligations. TiVo's failure to either comply with P.R. 3-1 or invoke P.R. 3-1(g) prejudices Samsung and its ability to prepare it defenses to TiVo's allegations.

## IV.   CONCLUSION

For at least the reasons set forth herein, Samsung requests that the Court order TiVo to timely comply with P.R. 3-1, either by providing contentions with the requisite specificity under P.R. 3-1(c), or by invoking P.R. 3-1(g) and requiring TiVo to comply with the corresponding 30 day supplementation period.

Dated: April 12, 2016

Respectfully submitted,

By: */s/ Melissa R. Smith*

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
D.C. Bar No. 459780
mckeon@fr.com
Michael C. Tyler
TX Bar No. 24051454
tyler@fr.com
FISH & RICHARDSON P.C.
1425 K Street N.W., 11th Floor
Washington, DC 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Thad Kodish
Georgia Bar No.: 427603
TKodish@fr.com
Christopher O. Green
Georgia Bar No. 037617
cgreen@fr.com
Noah C. Graubart
Georgia Bar No.: 141862
graubart@fr.com
Ajit Dang
Georgia Bar No. 352611
Dang@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

*Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7(h). This non-discovery motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on March 25, 2016, by telephone among the following participants: Ruffin Cordell, Melissa Smith, Thad Kodish, Noah Graubart, Ajit Dang, and Erin Alper for the Defendants, and Tom Werner and Ben Haber for the Plaintiff. Melissa Smith for Samsung and Sam Baxter for TiVo further attempted to resolve the issue between April 2 and April 12. The parties were unable to reach agreement as to Samsung's requested relief.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via electronic mail on April 12, 2016 to all counsel of record for Plaintiffs who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/Melissa R. Smith*
Melissa R. Smith