**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TIVO, INC.,** | |
|        **Plaintiff,** | |
|     **v.** | **CASE NO. 2:15-CV-1503-JRG** |
| **SAMSUNG ELECTRONICS CO., LTD.,** and **SAMSUNG ELECTRONICS AMERICA, INC.** | |
|       **Defendants.** | |
| **SAMSUNG ELECTRONICS CO., LTD.,** and **SAMSUNG ELECTRONICS AMERICA, INC.,** | |
|       **Counter Plaintiffs,** | |
|     **v.** | |
| **TIVO, INC.** | |
|       **Counterclaim Defendant.** | |

**BROADCOM'S OPPOSITION TO TIVO'S "EMERGENCY" MOTION TO CLARIFY
DISCOVERY OBLIGATIONS IN LIGHT OF PRIOR PROTECTIVE ORDER**

# I.    INTRODUCTION

For companies like Non-Party Broadcom Corporation ("Broadcom"), source code is a special and particularly closely-guarded type of proprietary information.  Broadcom's success as a company is due, in material part, to developing code that gives it a competitive advantage in the marketplace.  Broadcom therefore vigilantly protects its source code, allowing access to only certain types of code by certain customers under strict NDAs and taking oftentimes onerous steps to ensure its code is disclosed or distributed in only limited and strictly-controlled circumstances.  Every time that Broadcom's confidential code is disclosed, it puts Broadcom at risk.

In recognition of the uniqueness of source code, and the risks to businesses who must produce it in litigation, this Court routinely includes special and heightened protective order provisions governing the handling of source code in litigation.  That is exactly what happened in TiVo's prior litigations against Motorola and Verizon.[1]  And, in reliance on the heightened protections of the *Motorola* and *Verizon* Protective Orders,[2] Broadcom agreed to the production of limited printouts of its source code that were in Motorola and Verizon's possession.

In a portion of the *Motorola* and *Verizon* Protective Orders ignored by TiVo's Motion, TiVo was unequivocally ***forbidden*** from retaining ***any*** Broadcom code at the end of the cases, regardless of that whether that code was found in an original printout (of which only limited copies could be made), attached as an exhibit to a deposition or filing, or incorporated in whole or in part into the text of an expert report.  Specifically, the prior Protective Orders unequivocally state that the exception for counsel to retain litigation materials "***shall not apply***" to source code and that "no partial or complete Source Code shall be retained ***under any circumstances*** absent

---

[1]    *Motorola Mobility, Inc. v. TiVo Inc.*, Case No. 5:11-cv-053 (E.D. Tex.) ("*Motorola*"); *TiVo Inc. v. Verizon Comm'ns, Inc., et al.*, Case No. 2:09-cv-257 (E.D. Tex.) ("*Verizon*").

[2]    *Verizon* Dkt. 86-1 (Mot. Ex. 2); *Motorola* Dkt. 64 (Mot. Ex. 1).

written consent from the Producing Party."  Mot. Exs. 1-2, at ¶ 24(b) (emphases added).

At the conclusion of the *Motorola* and *Verizon* cases in 2013, TiVo returned Broadcom's confidential productions and then, in response to Broadcom's follow-up request for confirmation that TiVo had complied with the destruction requirements of the Protective Orders, told Broadcom in writing that it had made good faith efforts to do so.  Ex. A.  Although TiVo indicated that it was retaining certain materials as allowed by the Protective Orders, TiVo conspicuously did ***not*** mention that Broadcom's code had been incorporated into those retained materials, and Broadcom—as a non-party—had no way of knowing this.  *Id.*  TiVo also did not mention (and Broadcom did not learn until a few weeks ago) that TiVo had actually made ***no*** effort to comply with the requirement that TiVo destroy all Broadcom code that had been incorporated into litigation materials.  Indeed, even when TiVo gave Broadcom its recent notice that it would re-produce Broadcom information from the prior cases to Samsung, TiVo did not explain—until Broadcom repeatedly asked what materials were to be reproduced to Samsung— that these materials included code that should have been destroyed long ago, rather than just the lesser levels of confidential technical information that TiVo was allowed to retain.

TiVo violated the *Motorola* and *Verizon* Protective Orders by not destroying Broadcom code that it was required to destroy.[3]  In tacit acknowledgement of that fact, TiVo notified Broadcom several weeks ago, on May 10, 2016, of its intent to file a motion to modify the *Motorola* and *Verizon* Protective Orders.  Ex. C at 3.  It then waited several weeks, pivoted, and instead filed the present motion for "clarification" in this *Samsung* case, captioning it as an "emergency."  Notably, TiVo's Motion never mentions the applicable standard for modification of protective orders in this District—a legal standard that TiVo cannot meet, as discussed below.

---

[3]   TiVo has previously violated prior Protective Orders with respect to Broadcom confidential information in other respects as well.  *See* Ex. B.

TiVo now seeks to perpetuate its violation—despite its failure to reasonably limit the distribution of source code in the earlier cases and comply with the protective orders there—by having the Court bless its reproduction of Broadcom source code now to Samsung (which is both a customer of and a competitor to Broadcom), where the code will presumably get even further intertwined with secondary litigation materials in this case and become even harder to sort out down the road.  TiVo makes this request ***even though the Motorola and Verizon products for which source code was previously produced are not relevant to this case and very few of the Broadcom chips at issue in the prior cases are at issue in this new litigation***—meaning that much of what would be produced is entirely irrelevant to this case against Samsung.

Against this background, one would expect that TiVo's tone would be contrite, but it is not.  TiVo resorts to attacking and blaming Broadcom for a situation that Broadcom did not cause, complaining about a burden that is either exaggerated or of TiVo's own creation, and claiming that its violation is excusable because, supposedly, everyone else was violating the Protective Orders, too—even though others from the prior cases have confirmed compliance with the Protective Orders.  These positions cannot withstand scrutiny.  TiVo's Motion should be denied, and Broadcom should be awarded its fees as a sanction for TiVo's conduct.

## II.     FACTUAL BACKGROUND

### A.     Broadcom's Production Of Confidential Information In *Verizon* And *Motorola*

In connection with the prior *Verizon* and *Motorola* litigations, it is undisputed that Broadcom both (a) produced confidential technical information other than source code, like technical manuals and data sheets, in response to Rule 45 subpoenas from TiVo, and (b) consented that Verizon and Motorola could make Broadcom source code in those Broadcom customers' possession available for review by TiVo pursuant to the strict terms of the Protective Orders in effect in those cases.  According to Broadcom's records, the Broadcom chips at issue

in the *Verizon* case included BCM3250, BCM3517, BCM7030, BCM7035, BCM7038, and

BCM7400, and the Broadcom chips at issue in the *Motorola* case included BCM3250,

BCM7035, BCM7038, BCM7400, BCM7405, BCM7413, and BCM7420.  Tessar Dec., ¶2.

TiVo identifies only two overlapping chips that are also at issue in this case against

Samsung:  BCM7400 and BCM7405.  In other words, only one out of the six chips at issue in the

*Verizon* case are now at issue in the present case, and only two out of the seven chips at issue in

the *Motorola* case are now at issue in the present case.  And, obviously, none of Motorola or

Verizon's downstream products are at issue here; this case is about Samsung's products.

**B.**     **The Prior Protective Orders Do Not Permit TiVo To Retain** *Any* **Code**

TiVo repeatedly quotes Paragraph 24(b) of the *Motorola* and *Verizon* Protective Orders,

but omits the critical final sentence of that Paragraph that shows TiVo's violation.  This omitted

sentence (bolded below) makes clear that the exception permitting retention of litigation

materials ***does not apply*** to source code incorporated into litigation materials, stating that "no

partial or complete Source Code shall be retained under any circumstances":

> Notwithstanding Paragraph 24(a), Outside Litigation Counsel for each Party may
> retain a record including one unredacted[4] copy of the following, regardless of
> whether CONFIDENTIAL INFORMATION or CONFIDENTIAL OUTSIDE
> ATTORNEY'S EYES ONLY INFORMATION of another Party or non-Party is
> included: (i) its correspondence file of this case; (ii) its pleadings file, including
> all briefs, memoranda, affidavits, supporting materials, and all papers served on
> the Party; (iii) any briefs and appendices on appeal; (iv) all legal research
> memoranda; (v) its file of deposition transcripts and accompanying exhibits; and
> (vi) its file of hearing and trial transcripts and accompanying exhibits.  ***In the
> instance of CONFIDENTIAL SOURCE CODE – ATTORNEYS' EYES ONLY
> INFORMATION, the foregoing exception to Paragraph 24(a) shall not apply
> and no partial or complete Source Code shall be retained under any
> circumstances absent written consent from the Producing Party.***

TiVo has never asked permission to retain any Broadcom source code.  Tessar Decl., ¶3.

---

[4]     The word "unredacted" does not appear in the *Verizon* Protective Order, but it is otherwise
identical to the *Motorola* provision.

C.      **TiVo Told Broadcom That It Had Complied With The *Verizon* And *Motorola* Protective Orders**

On September 23, 2013, TiVo sent Broadcom a letter "to address the handling of confidential materials designated under the Protective Orders." Ex. D.  With that letter, TiVo returned Broadcom's non-source code productions.  Upon receipt of that letter, Broadcom emailed TiVo to "confirm that all copies of ***all*** Broadcom confidential information from any of the TiVo cases have been destroyed." Ex. A (emphasis added).  TiVo's response states that "we have made reasonable and good faith efforts to comply with our obligations under the applicable protective orders." *Id.*  Although TiVo also stated, "Please note that the protective orders specifically provide that outside counsel may retain certain materials, such as their work product," TiVo did ***not*** indicate here or elsewhere that any of the retained materials wrongly contained Broadcom source code.  *Id.*

D.      **TiVo's Notice To Broadcom Of Its Intent To Re-Produce Broadcom Information**

On April 25, 2016, TiVo sent Broadcom a notice that it would produce Broadcom confidential information from prior cases to Samsung.  The letter did not identify the types of Broadcom materials to be produced.  It did, however, incorrectly reiterate TiVo's compliance with the prior Protective Orders, stating that the Broadcom materials to be produced to Samsung were of the type that "TiVo is permitted to retain under the Motorola Litigation Protective Order." Ex. E.[5]

---

[5]   Confusingly, after discussing the reproduction of the *Motorola* litigation materials, the letter also stated that "TiVo also possesses documents, including source code that may reflect Broadcom confidential information." Ex. E.  TiVo ultimately explained that this was not a reference to prior litigation materials in the possession of TiVo's outside counsel, but instead to Broadcom technical documents and source code that were in TiVo's employees' possession through ordinary business channels, since TiVo is a Broadcom customer for certain products.  Disputes relating to the production of those materials were ultimately resolved and are not before the Court.

Broadcom immediately requested copies of the materials that TiVo intended to produce. Ex. C at 6.  TiVo responded that it could not provide the litigation materials into which Broadcom's confidential information was incorporated, because they were so voluminous.  *Id.* at 5.  It was in response to this email, which Broadcom understood from TiVo's communications to relate to general confidential information—not source code that TiVo had not been allowed to retain—that Broadcom stated that it understood parsing the materials might be difficult.  *Id*. TiVo now quotes that email completely out of context—attempting to use Broadcom's reasonableness against it, as if the same standards apply to code that was not allowed to be retained as apply to other types of confidential information that were allowed to be retained. Mot. at 7.  In that same email, in fact, Broadcom requested clarification on whether TiVo had retained source code, which was ***not*** permitted by the protective orders.  Ex. C at 5.

Only then did TiVo finally confirm that "there are some excerpts of Broadcom code in some of the materials mentioned above."  *Id.*  Upon learning this, Broadcom immediately objected and asked TiVo to destroy the source code excerpts, pursuant to the Protective Order. *Id*.  TiVo refused, and—as early as May 10, 2016—stated that it would seek modification of the protective orders in the *Motorola* and *Verizon* cases.[6]  *Id.* at 3.  It did not do so, ultimately filing the present motion instead, asking the Court to ignore or modify the prior Protective Orders without even mentioning the standard applicable to motions to modify protective orders.

## E.     Broadcom Has Attempted Multiple Compromises To Meet Everyone's Needs

Broadcom proposed a solution that took into account Samsung's desire to preserve the prior litigation materials, in case they are ever needed, and Broadcom's desire that TiVo not retain custody of the materials containing Broadcom source code that TiVo had improperly

---

[6]   This timing is irreconcilable with TiVo's "emergency" designation for the current Motion.

retained.  Specifically, Broadcom proposed that TiVo retain only a redacted version of the relevant pages that contain Broadcom code, providing the unredacted original pages to Broadcom for safekeeping.  TiVo rejected this proposal, claiming that it was unable to tell which code was Broadcom's and which code was Motorola's or Verizon's, since the Broadcom code had been made available by Motorola and Verizon.

To address that problem, Broadcom then proposed that Motorola or Verizon, who already have Broadcom code in their possession for business purposes, retain the unredacted pages from TiVo for their cases.  Ex. I.  TiVo never responded to that proposal, instead filing this Motion.

### III.   LEGAL STANDARD

#### A.   Modification Of Protective Orders

"[I]n deciding whether to modify a stipulated protective order at the behest of a party that originally agreed to the order for reasons related to the private interests of the parties to the action, the court considers four factors: (1) the nature of the protective order, (2) the foreseeability, at the time of the issuance of the order, of the modification requested, (3) the parties' reliance on the order, and most significantly (4) whether good cause exists for modification."  *United States v. Ocwen Loan Servicing*, *LLC*, No. 4:12-CV-543, 2016 WL 278968, at *2 (E.D. Tex. Jan. 22, 2016).  A court enjoys broad discretion in entering and modifying protective orders.

#### B.   Sanctions For Violation Of Protective Orders

A district court has the authority pursuant to Rule 37, as well as inherent power, to impose sanctions for the violation of a protective order.  *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012); *Allergan, Inc. v. Sandoz Inc.*, No. 2:09-CV-182, 2011 WL 2563238, at *2 (E.D. Tex. June 28, 2011).

## IV.   ARGUMENT

**A.     The *Verizon* And *Motorola* Protective Orders Should Not Be Modified To Eliminate The Requirement That Broadcom's Code Be Destroyed**

Although TiVo belatedly decided not to caption its present Motion as a "Motion to Modify the Prior Protective Orders" and did not file the present Motion in the *Motorola* or *Verizon* cases, TiVo still asks the Court to modify the prior Protective Orders to strike out the requirement that TiVo destroy Broadcom's source code.  As such, this Court should apply the established test for modification of a protective order.  And, here, all factors weigh against modification of the *Motorola* and *Verizon* Protective Orders.

### 1.     Nature Of The Protective Order

There are multiple types of protective orders.  The prior Protective Orders here are "blanket" (not "specific" or "umbrella") protective orders—meaning that they require the parties to designate as protected the information that each side reasonably believes particularly sensitive. *Ocwen Loan Serv., LLC*, 2016 WL 278968, at *3.  Although there are some circumstances where blanket orders are "moderately" susceptible to modification, courts are more reluctant to do so for a protective order that was proposed or agreed to by the party now seeking the modification. *United States v. Homeward Res., Inc.*, No. 4:12-CV-461, 2016 WL 279543, at *3 (E.D. Tex. Jan. 22, 2016).  Here, TiVo agreed to the relevant blanket Protective Order provisions.  *See Verizon* Dkt. 86-1, *Motorola* Dkt. 63-1.  This factor therefore weighs against modification.

### 2.     Foreseeability Of Modification At The Time Of The Issuance Of The Order

Where the requested modification should have been reasonably foreseeable at the time of the issuance of the original protective order provision, this weighs against modification.  *Id.* TiVo is a sophisticated party with experienced counsel and a history of asserting a core group of patents.  TiVo knows the evidence that it will rely upon to prove infringement, including source

code.  TiVo knows the ways in which a party's confidential information can proliferate across litigation materials, and TiVo knows that ultimate size of the record for patent infringement matters will be large.  Of course it was foreseeable to TiVo that there might be code in its expert reports and other litigation materials.  TiVo nonetheless agreed in multiple cases that it would destroy such code at the conclusion of those cases.  This factor thus weighs against modification.

### 3.     Broadcom's Reliance On The Protective Orders

"It is important that litigants can place their confidence in the integrity of protective orders so that sufficient information passes between the parties 'to secure the just, speedy, and inexpensive determination,' Fed.R.Civ.P. 1, of lawsuits while protecting from excess dissemination that which rightly should be."  *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2008 WL 4371679, at *3 (E.D. Tex. Sept. 18, 2008).  In analyzing whether a protective order should be modified, Courts look at the "extent the party opposing the modification relied on the protective order in deciding the manner in which documents would be produced in discovery."  *Ocwen Loan Servicing, LLC*, 2016 WL 278968, at *3.  Courts have found it "presumptively unfair…to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."  *Id*.

Broadcom's source code is closely guarded and extremely proprietary.  Broadcom does not agree to its production lightly and carefully reviews protective orders to evaluate their terms before agreeing to any code disclosure.[7]  Here, Broadcom relied upon the Protective Orders in

---

[7]     TiVo complains that Broadcom is the only one of dozens of companies to object to reproduction of confidential information to Samsung.  For clarity, Broadcom does ***not*** object to the reproduction of general, non-code confidential information; it only objects to the reproduction of ***source code***.  TiVo does not say how many of those other non-objecting third parties had source code in the materials to be reproduced, the extent of any such code, its importance to the case, and/or whether TiVo more clearly disclosed to those other third parties than it did for Broadcom the unexpected continued existence of any code.  In other

agreeing to discovery of this highly sensitive information.  *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Ops. Inc.*, No. 6:06 CV 222, 2009 WL 10184564, at *2 (E.D. Tex. Apr. 8, 2009) ("Defendants produced confidential documents in this case with the understanding that those documents would be used only in this case and would be destroyed at the resolution of this case. The parties relied on the terms of the Protective Order in their document production.").  Such reliance is "elevated" where the information at issue pertains to trade secrets.  *Raytheon Co.*, 2008 WL 4371679, at *3.  Accordingly, this factor weighs against modification as well.  *See id.* (denying request to modify PO to allow production of defendant's records in case brought by plaintiff against another defendant).

### 4.      There Is No Good Cause For Modification

TiVo has not shown good cause to modify of the prior Protective Orders.  "'Good cause' in this context requires 'changed circumstances or new situations' warranting modification of a protective order."  *Homeward Res., Inc.*, 2016 WL 279543, at *4.  TiVo has shown none of this; indeed, the history of the case shows that TiVo was aware that this situation could arise, but nevertheless agreed that it would destroy Broadcom's code at the conclusion of the prior cases.

Moreover, there is clearly good cause for the original Protective Orders to remain in place.  At issue here is Broadcom's source code, which is a type of confidential information that is routinely subjected to heightened restrictions.  *See*, *e.g.*, *Raytheon*, 2008 WL 4371679, at *3 n.2 ("Because this civil action involves disputes between direct competitors in a lucrative market regarding highly sensitive information, the court finds that the protective order is supported by, and was entered on, good cause.").  Requiring destruction of source code at the conclusion of litigation is a common and necessary protection.

---

words, the statistic that TiVo provides is meaningless, even if one was to take at face value (which the Court should not) that the lack of objection by other parties to the reproduction of their confidential information should somehow be imputed to Broadcom, which does object.

**B.      TiVo's "Burden" Is Either Grossly Overstated Or A Problem Of Its Own Making**

Given the tight *Verizon* and *Motorola* restrictions on the proliferation of Broadcom's code (*e.g.*, ¶ 28(k) of the Protective Orders, which limit the code that can be submitted in court filings), it is concerning to Broadcom to learn the extent to which TiVo has propagated Broadcom's code.  TiVo claims that it would be "extraordinarily burdensome," take "Herculean efforts," and impose "immense burdens" to unravel Broadcom's code.  *See* Mot. at 2, 8.

Broadcom submits that TiVo's arguments of burden—which are unsupported by any declaration or other evidence—are either grossly exaggerated or a problem of TiVo's making. The purpose of Exhibit 5 to TiVo's Motion appears to be to suggest that Broadcom code is incorporated into the long list of categories of documents described.  But that surely cannot be the case.  Broadcom's code could not have been shown to many (if any) fact deponents, for instance, consistently with the Protective Order.  Nor is there any reason to expect that Broadcom's code would be found in invalidity contentions, invalidity expert reports, damages expert reports, most of the Court's orders, *Markman* materials, most discovery or other pretrial motions, or nonexistent appeal briefing and orders.[8]  Indeed, if this case follows the pattern of most patent litigation cases, the only places one would expect to find source code would be in infringement (or possibly invalidity, although that is less likely) expert reports and depositions, Broadcom deposition transcripts (of which there were ***none*** for either the *Motorola* or *Verizon* cases), and summary judgment briefing relating to infringement (and possibly invalidity).  TiVo was only allowed to retain one set of such materials, so it should be a straightforward task to review those limited materials and sort out the code that should be destroyed.

To the extent that TiVo does not exaggerate the burden, however, TiVo's carelessness in

---

[8]    The *Motorola* and *Verizon* cases both settled before trial.

propagating Broadcom's code to such an unnecessarily extensive extent without any apparent logging or tracking system should not excuse TiVo from its Protective Order obligations.  This is a problem of TiVo's making, and Broadcom should not be punished for it.  If TiVo failed to keep track of Broadcom's code in the prior cases and comply with those Protective Orders, it should not be permitted to perpetuate that violation by producing the materials again in this litigation or future litigations, particularly when so much of what it seeks to produce is irrelevant to this case.

**C.     TiVo Should Not Be Allowed To Retain Broadcom's Code From Prior Cases, Particularly When Reasonable Alternatives Are Available**

Broadcom proposed reasonable alternatives here to mitigate the damage from TiVo's Protective Order violations while still ensuring Samsung's goal of preserving the documents in question.  TiVo ultimately would not agree to those proposals—and didn't even respond to Broadcom's last proposal on point.  Ex. I at 1.  Broadcom continues to believe that TiVo could: (a) redact Broadcom's code from the *Motorola* and *Verizon* litigation materials; (b) provide one copy of the unredacted pages to Broadcom (or Motorola or Verizon, as applicable, or even to the Court in a locked box) for safekeeping; (c) destroy all other copies; and (d) produce only redacted pages to Samsung.  Then, if Samsung believed that it had a legitimate need for the redacted pages (keeping in mind that this case should be about ***Samsung***, not Motorola or Verizon), Samsung could discuss that issue with Broadcom directly.

**D.     TiVo Violated The Protective Orders And Should Be Sanctioned**

TiVo's conduct violates the plain language of the prior Protective Orders.  TiVo was not allowed to retain Broadcom code, one of its most sensitive types of confidential information, but it did so contrary to the express dictates of the Protective Orders and without any notice to Broadcom.  Even worse, TiVo told Broadcom that it had made good faith efforts to comply—but it now turns out that it actually made no efforts at all on that front.

"Complete good faith compliance with protective orders is essential to modern discovery practices and counsel must temper their zeal in representing their clients with their overreaching duty as officers of the court." *Lunareye, Inc. v. Gordon Howard Associates, Inc.*, 78 F. Supp. 3d 671, 675-76 (E.D. Tex. 2015).  This Court has recognized the "importance of scrupulous adherence to protective orders in intellectual property cases to promote the exchange of confidential and proprietary technical information" and ordered monetary sanctions for even ***inadvertent*** violations of a protective order.  *Id.*  Such sanctions, for even inadvertent conduct, are appropriate to "promote respect for, and meticulous observance of protective orders, to deter [a party] from a repeat offense, and to deter others from similar conduct."  *Id.*

Here, rather than come clean and remedy its violation, TiVo has doubled-down.  Indeed, TiVo justifies its violation by claiming that other parties have not complied either—as if someone else's violation of a protective order would or could excuse TiVo's violation.  In fact, however, both Motorola and Verizon confirmed compliance to Broadcom months ago (Exs. F, G), and Motorola recently unequivocally reiterated that compliance.  *See*, *e.g.*, Ex. H ("Paragraph 24(b) of the Protective Order is unambiguous that the exception for outside litigation counsel to retain certain pleadings and other files does not apply to 'Confidential Source Code – Attorneys' Eye Only Information.'  Shortly after the case settled, QE [Motorola's outside counsel] took steps to comply with the plain language of the Protective Order …").  This fact cannot be reconciled with TiVo's "but-everyone-was-doing-it" excuse or the unsupported claims in TiVo's Motion of rampant noncompliance with the Protective Orders by all parties.

TiVo also attempts to hide behind Paragraph 24(a) of the Protective Orders, stating that "[t]o the extent any destruction of materials is required under any aspect of Paragraph 24, a party need only make 'reasonable and good faith effort' to comply.  *See id*. ¶ 24(a).").  Mot. at 9.

13

Paragraph 24(a), however, does not apply to source code, as stated in Paragraph 24(b).  Even if it did, TiVo has provided no declaration or other evidence indicating any good faith attempt to destroy the relevant Broadcom code.  Indeed, according to TiVo, such code is rampant through the materials, and **none** was destroyed, so it is readily apparent that **no** effort was made to comply with the relevant provision of Paragraph 24(b), much less a good faith effort.

Finally, contrary to TiVo's arguments, the final sentence of Paragraph 24(b) does not state that it only applies to "source code **files**" as TiVo attempts to argue.  Mot. at 10.  The language could not be clearer that it applies to all source code information (whether "partial or complete")—and the entire point of that sentence in question is to say that source code that has been incorporated into litigation files must be deleted.  *See* Mot. Exs. 1-2 at ¶ 24(b) ("In the instance of CONFIDENTIAL SOURCE CODE – ATTORNEYS' EYES ONLY INFORMATION, the foregoing exception to Paragraph 24(a) [permitting retention of litigation files] shall not apply and no partial or complete Source Code shall be retained under any circumstances absent written consent from the Producing Party.").  It is difficult to understand TiVo's claim that it "never understood that this provision applied to code imbedded within litigation documents." *See* Mot. at 10.  TiVo's very proposed modification to the Protective Order (*see*, *e.g.*, Ex. 3) cannot be reconciled with the sentence that it is supposed to modify.

Some sanction is appropriate here, and the one that Broadcom seeks is not severe.  But to condone TiVo's conduct "would undermine the Court's integrity and ability to enforce its own rules." *Allergan*, 2011 WL 2563238, at *2.  Accordingly, Broadcom respectfully requests that TiVo be sanctioned in the form of an award of Broadcom's attorneys' fees incurred in connection with responding to TiVo's attempts to produce source code in this case, including

responding to this motion.  *See Smith*, 685 F.3d at 489 (affirming sanction of attorneys' fees award for inadvertent violation of protective order).

## V.   CONCLUSION

TiVo has not followed this Court's Protective Orders, and Broadcom (a non-party) now is at risk of its highly-sensitive source code being further disseminated in violation of those Protective Orders.  The source code at issue is of little to no relevance to this case and should not be kept by TiVo in violation of the Protective Orders.  Broadcom respectfully requests that the Court (1) grant sanctions against TiVo for its violation of the *Motorola* and *Verizon* Protective Orders; (2) deny TiVo's request to modify the *Motorola* and *Verizon* Protective Orders; and (3) order TiVo to destroy all copies of Broadcom source code from the prior cases in its possession (or, alternatively, to provide a single unredacted copy to Broadcom's counsel (or Motorola or Verizon's, for the respective cases) or in a locked container to the Court for safekeeping).

DATED: July 5, 2016                          Respectfully submitted,


By:  */s/  Elizabeth Banzhoff*
    Amanda Tessar
    Elizabeth Banzhoff
    PERKINS COIE LLP
    1900 Sixteenth Street, Suite 1400
    Denver, CO  80202-5255
    Telephone:  303.291.2300
    Facsimile:  303.291.2400
    ATessar@perkinscoie.com
    EBanzhoff@perkinscoie.com


    **ATTORNEYS FOR NON-PARTY BROADCOM CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM-ECF system on the 5th day of July, 2016.

/s/ Elizabeth Banzhoff
Elizabeth Banzhoff